IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTONIO WARREN GANTT,

    Petitioner,

    v.

FRANK BISHOP,

    Respondent.

Civil Action No.: PWG-19-3586

## MEMORANDUM OPINION

In response to this Petition for Writ of Habeas Corpus, Respondents assert that the Petition is subject to dismissal because it raises procedurally defaulted claims which are otherwise without merit. ECF No. 7 (Answer). Petitioner Antonio Warren Gantt has filed a reply. ECF No. 9 (Reply). No hearing is necessary to determine matters pending before the Court. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the Petition shall be denied and a certificate of appealability shall not issue.

## BACKGROUND

Mr. Gantt was convicted of multiple counts of robbery and related offenses in connection with two robberies of the Maryland Bank and Trust in Lexington Park, Maryland on September 24, 2007 and October 31, 2007. The Court of Special Appeals summarized the underlying facts of the crimes as follows:

> The first of the actual bank robberies occurred on September 24, 2007, at the Lexington Park branch of the Maryland Bank and Trust. Gantt, single-handedly, walked up to a teller and demanded cash in hundreds and fifties, threatening to kill

1

the teller if she did not comply. The teller turned over to him approximately $22,000. Gantt was not immediately apprehended and remained at large to strike again.

Five weeks later, on October 31, 2007, Gantt, again single-handedly, robbed the same Lexington Park branch of the Maryland Bank and Trust for yet a second time, making off on that occasion with between $43,000 and $44,000. Eight separate witnesses identified him at trial. Three of the tellers were sprayed with gasoline and ordered to go into the back room where the money was stored. Gantt threatened to "kill [them] and burn the bank down" if they did not follow his orders. Gantt herded them into the vault and shut the door. On that occasion, however, the bank manager was able to turn over to Gantt $1,000 in "bait money." Gantt was shortly thereafter apprehended.

*Gantt v. State*, 241 Md. App. 276, 282, *cert. denied*, 466 Md. 200 (2019) (all references to "the appellant" replaced with "Gantt").

Gantt was initially tried in November of 2008, before a jury, in the Circuit Court for St. Mary's County, Maryland, where he was convicted of both robberies. *Id*. He was sentenced, in January of 2009, to concurrent terms of life without the possibility of parole. *Id*.

On direct appeal, Gantt raised four grounds for relief, one of which concerned "[w]hether the trial court erred in allowing [him] to discharge his counsel pursuant to Md. Rule 4-215 when [he] was not informed that he was facing a sentence of life without parole." ECF No. 7-1 at 282. The Court of Special Appeals reversed and remanded for a new trial finding the trial court committed reversible error in allowing Gantt to discharge his attorney without informing him of the potential sentencing consequences. *Id*. Having reversed on this issue, the Court of Special Appeals did not reach Gantt's additional claims of trial court error. *Id.* at 279.

Prior to the start of his second trial, Gantt again moved to discharge his attorney. The trial court held a hearing on Gantt's motion on July 21, 2011 and found that Gantt's attorney was competent and Gantt lacked a meritorious reason to discharge his attorney. ECF No. 7-2 at 21

2

(Transcript 7/21/2011). The court specifically forewarned Gantt that proceeding without an attorney was not advisable given he was facing a possible sentence of life imprisonment stating:

> I want to make it clear that you know that based on what [defense counsel is] going to hand you or have someone hand you, because of your prior violent crime convictions, then you can potentially get what [the court] gave you [after your first trial, which] was life without parole in each case and . . . that's one of the major reasons and along with all the other legal things that I know you're aware of, that counsel would be very important for you to have and—but I don't have any choice. If . . . you're not going to cooperate with [defense counsel,] and I can't find that there's any meritorious reason for him not to be your attorney, then you don't have counsel and that's how it's going to be.

ECF No. 7-2 at 21.

Having discharged counsel, and not being entitled to a replacement, Gantt proceeded to trial, representing himself on the October 31, 2007 robbery (Case Number 18-K-07-578). He was retried on September 6, 7, and 8, 2011, by a jury sitting in the Circuit Court for St. Mary's County. *See Gantt v. State*, 241 Md. App at 283, 292. After the jury was selected, including three alternatives, the Court asked Gantt if he was satisfied with the jury. The following exchange ensued:

> MR. GANTT: No, ma'am, I'm not. Because of the racial diversity in my jury pool, the amount of African Americans, I'm entitled to a jury of my peers. [The prosecutor] actually struck one African American woman. On the other hand, I've chosen lots of them and I—I don't think [the prosecutor] should have strike [sic] an African American female because there was no reason for her [sic] to do that. This is basically unfair. It's basically undiversed [sic]. The only reason for him to strike this woman.
>
> THE COURT: Alright. Well, Mr. Gantt, the same reason I didn't ask any questions of why you wanted to strike people, because it is your prerogative. I don't get to ask any questions of Mr. Fritz because that is his prerogative. So unfortunately that's just how it played out in this particular regard.
>                                                  * * *
> MR. GANTT: Your Honor, for the record, would you excuse me, respectfully, I never said I had a problem with my jury. I said I had a problem with the State's Attorney striking an African American citizen from the jury.
>
> THE COURT: I . . . understood that. I did understand that.

MR. GANTT: Thank you.

[The jury was then sworn, and the court then discussed housekeeping matters].

[PROSECUTOR]: Your Honor, can I . . . be heard for a second?

THE COURT: Yes?

[PROSECUTOR]: And I—I know the Court didn't ask me why I struck juror number 144, but seeing as how it was raised by the defense, I'd like the record to be clear that I struck juror number 144 who is an African American to get to juror 163 who I've felt through appearances would be more favorable, quite simply, to the State in hearing the evidence.

I was impressed with his appearances, his looks. As you well know, we don't have a lot of information other than gut to make our decisions. That decision was made as a gut decision. It was not a racially prejudicious [sic] decision by the State. Thank you, Your Honor.

THE COURT: And I think, for the record, juror 345 who I thought was rightfully stricken for cause was also African American and, unfortunately, we don't have a large population of African American people. It happens all the time with our jurors that that we don't have a lot of African American people and—but I've never known any prejudice in that regard and I certainly wouldn't tolerate it if I thought there was.

ECF No. 7-4 at 69-72 (Transcript 09/07/2011).

The trial commenced and on September 8, 2011, the jury found Gantt guilty of three counts of robbery and related offenses. ECF No. 7-5 at 172-74 (Transcript 9/8/2011).

On September 13, 2011, in Case No. 18-K-07-0577, Gantt pled guilty to one count of robbery. ECF No. 7-6 at 6-7. (Transcript 9/13/2011). During the plea hearing, the State recounted that Gantt was charged in a three-count indictment regarding the September 24, 2007 bank robbery. Count One of the indictment charged him with simple robbery and carried a maximum sentence of 15 years. *Id*. at 6-7. The State and Gantt agreed that he would plead guilty to Count One and the sentence imposed would be 15 years concurrent to any sentence imposed in Case No. 18-K-07-0578 (the October 31, 2007 robbery). *Id*. The state also noted that Gantt would receive

4

credit from the time of his arrest. *Id*. Gantt stated his agreement and his desire to insure he receive

proper credit for time served and that his sentence would run concurrent to the sentence yet to be

imposed in Case No. 18-K-07-0578. *Id*. The Court specified that the agreement did not cover the

sentences that could be imposed in his other case (Case No. 18-K-07-0578), which could include

a sentence of life without parole.[1] *Id*.

> MR. GANTT: . . . . It's not like I'm asking for anything special.
> Regardless of what type of sentence would be imposed in this case, whether it's a thousand years or a hundred years or two large sentences, my sentence would normally begin, if the Court would impose the sentence as correctly on October 31, 2007, with all credit for time served . . . .
>
> So with that, as long as these sentences are executed from that date and run concurrent and, you know, not later in the future, as long as they're executed from that date with all credit for time served, yes, yes, ma'am, I will agree to the plea.
>
> THE COURT: Okay. Let me just make clear that we're only talking about this one case.
>
> MR. GANTT: Yes, ma'am.
>
> THE COURT: The other case, we're not doing sentencing today, and that's -- we're doing the presentence investigation; and that, you can still get life without parole as the State has asked. This is separate than that. You understand that?
>
> MR. GANTT: Yes, ma'am.
>
> THE COURT: Okay. All right. So then I am hearing that you do want to go ahead and accept this plea agreement, or you have entered into this plea agreement, which I am also willing to accept.
>
> That you would plead guilty to Count One . . . . It would be 15 years in the Division of Corrections, with credit from October 31, 2007. And that this sentence would run concurrent to whatever it is you end up getting in K-07-578. Is that correct?
>
> MR. GANTT: Yes, ma'am.

---

[1] The State filed notice of its intent to seek life without the possibility of parole in Case No. 18-K-07-0578 on November 18, 2008 and September 8, 2011. ECF No. 7-1 at 156, 220-21. Md. Code Ann., Crim. Law 14-101 provides, in pertinent part, "on conviction for a fourth time of a crime of violence, a person who has served three separate terms of confinement in a correctional facility as a result of three separate convictions of any crime of violence shall be sentenced to life imprisonment without the possibility of parole." The State is required to provide notice of its intent to seek enhanced penalties under this section. Md. Rule 4-245 (2011).

ECF No. 7-6 at 5-7.

On September 27, 2011, in preparation for sentencing in Case No. 18-K-07-0578, the State filed a sentencing memorandum which included certified copies of three convictions demonstrating that Gantt had been convicted and sentenced on three separate occasions prior to the robberies of the Lexington Park bank in September and October of 2007. ECF No. 7-1 at 153; ECF No. 7-7 at 5-8. (Transcript 10/14/2011). On the same day, the State also filed a "Supplemental Notice of Conviction of Crime of Violence." *Id*.

Sentencing in both cases occurred on October 14, 2011. In Case No. 18-K-07-0577 (the September 24, 2007 robbery), the Court abided by the plea agreement and sentenced Gantt to 15 years' incarceration, to run concurrently to whatever sentence it imposed in Case No. 18-K-07-0578 (the October robbery) and credited Gantt with time served. ECF No. 7-7 at 2-4.

For the October robbery, the State introduced its sentencing memorandum and notice regarding Gantt's prior convictions for violent crimes. ECF No. 7-7 at 5-10. The State asked that the court impose life sentences without the possibility of parole. *Id*. at 10. The Court agreed and entered a sentence of life without the possibility of parole on each of the three robbery counts. *Id*. at 16; ECF No. 7-1 at 357.

Gantt did not file an application for leave to appeal his guilty plea or sentence entered in Case No. 18-K-07-0577. ECF No. 7-1 at 17-20. He did however note a timely appeal challenging his convictions and sentences entered in Case No. 18-K-07-0578. *Id*. at 154. He raised five claims of trial court error. Namely, the court erroneously:

1.    denied his motion to have the court appoint counsel for him;
2.    advised him with respect to his right to testify;
3.    denied his request to summon defense witnesses or, in the alternative, erroneously denied his motion to postpone the trial;
4.    limited him to ten peremptory juror challenges; and

5.      imposed multiple sentences of life imprisonment without parole.

ECF No. 7-1 at 298, 332.

The Court rejected Gantt's first four claims. ECF No. 7-1 at 338-357. However, the State concluded that, under Maryland law, the sentencing court could not impose multiple enhanced life sentences without parole: only one enhanced life sentence without parole could be imposed. ECF No. 7-1 at 357-584.  The Court agreed and affirmed Gantt's life without parole sentence on one count of robbery but vacated the other two robbery sentences and remanded the case for resentencing. *Id*. Gantt's timely petition for writ of certiorari was denied by the Maryland Court of Appeals. *Gantt v. State*, 432 Md. 468 (2013) (table).

On remand, Gantt was sentenced "to a term of 20 years on each of the [challenged] armed robbery convictions, the sentences to run concurrently" to his sentences of life without the possibility of parole and his 15 year term of conviction in Case No. 18-K-07-0577. *Gantt v. State*, 241 Md. App. at 284.

On December 13, 2013, Gantt initiated state post-conviction proceedings. ECF No. 7-1 at 359-69. In his initial, self-represented petition, Gantt raised seven claims, including a claim that his enhanced life without parole sentence violated his plea agreement under both state and federal law and he received ineffective assistance of appellate counsel because appellate counsel failed to raise certain issues Gantt believed were preserved. *Id*. On December 30, 2013, Gantt filed a self-represented supplemental petition providing an argument in support of his claim that his appellate counsel was ineffective. ECF No. 7-1 at 370-74.

On September 26, 2014, Gantt filed a counselled supplemental petition. ECF No. 7-1 at 376-88. In this petition, Gantt argued, among other things, that appellate counsel was ineffective

for failing to raise on appeal a claim "that the trial judge failed to address a *Batson*[2] challenge made by the Petitioner, and the State failed to proffer race neutral grounds for striking an African American juror." ECF No. 7-1 at 379.

Thereafter, on December 27, 2016, Gantt filed another self-represented "Supplemental Petition for Post-Conviction Relief." ECF No. 7-1 at 389-92. Here he argued that he was "denied his Sixth Amendment right to a fair trial by a jury when the State failed to submit to the jury facts, the state inten[d]ed to rely on, to impose a mandatory minimum sentence under Criminal Law Article, Section 14-101(c)." *Id*. at 389.

Lastly, on November 1, 2017, Gantt filed a final supplement to his petition, this one through counsel. ECF No. 7-1 at 393-416 (the "November Supplement"). Here, Gantt claimed he received ineffective assistance of appellate counsel when counsel failed to raise two viable claims on appeal: (1) trial court error as to the denial of Gantt's motion for removal of the case to another jurisdiction due to pre-trial publicity; and (2) failure to raise a "meritorious" claim based on an alleged *Batson* violation. *Id*. at 400-410. Gantt also alleged ineffective assistance of trial counsel in failing to file a motion for reconsideration of sentence pursuant to Md. Rule 4-345(e) and for failure to file an application for review of sentence by a three-judge panel pursuant to Md. Rule 4-344. *Id*. at 410-15.

During the November 9, 2017 hearing on Gantt's post-conviction petition, he withdrew all claims that were not set forth in his November 1, 2017 counselled supplemental Petition. ECF No. 7-8 at 4, 15-17, 21-23 (Transcript 11/9/2017).

The post-conviction court entered an opinion and order on December 21, 2017, granting in part and denying in part Gantt's petition. ECF No. 7-1 at 417-27. The court granted the petition in

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

regard to trial counsel's failure to file post-trial motions for review and reconsideration of Gantt's sentence. *Id*. at 424-27. Gantt was provided an opportunity to file belated motions. *Id*. The petition was denied in all other respects. *Id*.

In regard to Gantt's ineffective assistance of appellate counsel claim regarding the *Batson* issue, the post-conviction court found that the Batson claim itself lacked merit and therefore he had not received ineffective assistance of counsel. ECF No. 7-1 at 424-25. Specifically, the post-conviction court determined that even though the trial judge "did not follow the conventional protocol" and strictly adhere to the "formal *Batson* inquiry" Gantt was not prejudiced because the State's Attorney spontaneously offered a non-discriminatory basis for striking the single juror. *Id* The Court further found that the judge's "response clearly shows that she did not and would not find that the peremptory strike of the African American juror was on racial grounds." *Id*. at 425.

Gantt filed a timely application for leave to appeal the decision of the post-conviction court, which was granted. *Gantt v. State*, 241 Md. App. at 285. The single claim raised on appeal was whether "The post conviction court erred in denying [Gantt's] claim of ineffective assistance of appellate counsel for failing to raise his meritorious *Batson* issue on direct appeal." *Id*. The Court of Special Appeals rejected Gantt's claim holding:

> [Gantt's] contention is thrice-curst. In the first place, appellate counsel cannot be held to have been ineffective for failing to select for appeal this particular contention when he had far sharper and more persuasive contentions in his appellate quiver. In the second place, appellate counsel cannot be held to have been ineffective for failing to raise on appeal a contention that suffered the twin procedural infirmities of being unpreserved and of having been waived. In the third place, appellate counsel cannot be held to have been ineffective for failing to raise on appeal a contention that was devoid of any substantive merit. In the last analysis, what was woefully ineffective in this case was not appellate counsel for failing to raise the contention but the contention itself that counsel wisely refrained from raising.

*Gantt v. State*, 241 Md. App. at 315. Gantt's petition for writ of certiorari was denied by the Court of Appeals. *Gantt v. State*, 466 Md. 200 (2019) (table).

Gantt's petition was filed in this Court on December 18, 2019 and is timely. ECF No. 1. The claims asserted by Gantt are set forth below.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*." Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have

"resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is

actually innocent.[3] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## ANALYSIS

Mr. Gantt raises four claims in the petition filed with this Court. First, he alleges that the State's Attorney used one of his strikes to reject an African American woman from sitting on his jury and the trial judge did not follow the protocol set forth in *Batson*. ECF No. 1 at 5. Next, Gantt claims that his sentence was unfair in that robbery with a dangerous weapon carries a maximum sentence of 20 years but he "was convicted as a repeat violent offender and received more time than most Maryland murder-sexually based offenders" (*id*.) even though he did not use a gun in any of his prior offenses, nor was anyone hurt. *Id*. Third, Gantt claims he was placed in double jeopardy when his prior convictions were used to sentence him to life without parole. *Id*. Lastly, Gantt contends that the courts never fully explained to him the consequences of his pleas in that he was not aware that those convictions could later be used to seek an enhanced sentence. *Id*.

## A.    Procedural Default

---

[3]    Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Gantt has not raised an actual innocence claim.

Each of Mr. Gantt's claims is procedurally defaulted. On direct appeal, the court rejected his claims that the trial court erred in denying his motion to have the court appoint counsel for him; advising him regarding his right to testify; denying his request to summon defense witnesses; and limiting his number of peremptory challenges. ECF No. 7 at 338-57. The appellate court granted relief solely as to Gantt's claim that he could not be sentenced to multiple terms of life imprisonment without parole. *Id.* at 357.

During his state post-conviction proceedings Gantt withdrew each of his claims, save the claims asserted by counsel in the November 1, 2017 filing. ECF No. 7-8 at 4, 15-17, 21-23. Those claims were: that appellate counsel erred in failing to raise on appeal the denial of the request to move the case to another jurisdiction; ineffective assistance of appellate counsel in failing to raise a claim based on an alleged *Batson* violation; and two claims regarding counsel's failure to file post-trial motions. ECF No. 7-1 at 400-412. In his application for leave to appeal the decision of the post-conviction court, Gantt raised only one claim: "The post conviction court erred in denying [Gantt's] claim of ineffective assistance of appellate counsel for failing to raise his meritorious *Batson* issue on direct appeal." *Gantt v. State*, 241 Md. App at 285.

Mr. Gantt has failed to raise the claims presented in his federal petition in any state court. Mr. Gantt has not presented his claims regarding sentencing disparity, double jeopardy, or the explanation of his guilty pleas to any state court. He did not raise the claims either on direct appeal or as ineffective assistance claims during his state post-conviction proceedings. He no longer has a mechanism to assert any of these claims in state court.

Further, he did not raise his claim of **trial court error** regarding the alleged *Batson* violation on direct appeal or in his state post-conviction proceedings. Rather, he raised the *Batson* claim solely as an ineffective assistance of appellate counsel claim during his state post-conviction

14

proceedings. He is now without an avenue to bring the *Batson* claim, couched as claim of trial court error, in state court.

Under Maryland law, a criminal defendant with claims demonstrable on the trial record is entitled to one direct appeal to the Court of Special Appeals and one petition for discretionary review to the Court of Appeals. *See generally* Md. Code Ann., Cts. & Jud. Proc. §§ 12-301, 12-307 12-208. A criminal defendant in Maryland is also limited to one post-conviction proceeding, which once resolved may only be opened "in the interest of justice." Md. Code Ann., Crim. Proc. §§ 7-103(a) and 7-104. Maryland case law is clear that it is not in the interest of justice to reopen a state post-conviction proceeding where, as here, a petitioner simply omitted a factual basis for a formal legal claim previously litigated. *State v. Syed*, 463 Md. 60, 101-04 (2019). Gantt has offered no basis for finding "cause" to excuse the procedural default. He simply claims that his appellate and post-conviction attorneys advised him to proceed on the claims asserted in the petitions they drafted, and that having followed their advice, he should not be prohibited from asserting those claims before this Court. Reliance on his attorney to determine the best claims to proceed upon is not a basis to excuse the procedural default of these claims. Additionally, this Court does not find that failing to reach the merits of the defaulted claims would result in the miscarriage of justice. Federal habeas relief is denied on the grounds asserted.

**B.      *Batson* Claim**

Lastly, even if the Court were, for the sake of argument, to construe Gantt's *Batson* claim as a preserved ineffective assistance of counsel claim rather than a defaulted claim of trial court error, Gantt would not be entitled to relief. When a petitioner alleges a claim of ineffective assistance of counsel, he must show that counsel's performance was deficient, and the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims alleging

ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *See Smith v. Robins*, 528 U.S. 259, 285 (2000).

With regard to the first prong of *Strickland*, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 455 U.S. at 688; *see Harrington*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court explains that the "first prong sets a high bar." *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 775 (2017). Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the wide range of professionally competent assistance." *Id.* (internal quotation and citation omitted). The standard for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, to satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief where the record establishes that it is "not reasonably likely that [the

16

alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In denying Gantt's claim, the Maryland Court of Special Appeals applied the *Strickland* standard and rejected Gantt's claim on the performance prong, holding that "appellate counsel cannot be held to have been ineffective for failing to select for appeal this particular contention when he had far sharper and more persuasive contentions in his appellate quiver." *Gantt v. State*, 241 Md. App. at 315. The court, relying on Supreme Court precedent, cited cases holding that the selection of appellate issues is a matter of professional strategy and judgment which generally should not be second guessed. *Id*. at 289-92. The court found that appellate counsel was not ineffective in selecting five claims to pursue on appeal while deciding not to weaken the force of those arguments "by diluting them with other probably less persuasive arguments." *Id*., 241 Md. App. at 293-300.

Additionally, the Court of Special Appeals determined that the *Batson* issue was also unpreserved and waived. *Id*. The Court observed that while Gantt made a complaint regarding the striking of the African American woman from the jury and about the overall composition of the jury, Gantt failed to pursue the matter and did not make any request for action or correction:

The trial then went forward without a word being said by Gantt. There was no request made of the court. There was no objection to how the court had handled the matter. Buried unseen, of course, in that seemingly informal exchange was the elaborate three-step analysis designed by the Supreme Court in *Purkett v. Elem*, 514 U.S. 765 (1995), to resolve *Batson* challenges. Gantt never claimed that the State's exercise of a single peremptory was presumptively racially discriminatory, thereby compelling [the trial judge] to insist that the State come forward with a race-neutral reason for the peremptory strike. Gantt never claimed that the reason for the strike advanced by the State was on its face not race-neutral. Gantt never claimed that [the trial judge] abused her discretion in implicitly accepting the State's explanation. One does not engage the gears of the elaborate *Purkett v. Elem* machinery simply by yelling, "*Batson*!" The trigger is a bit more complicated than that.

The case continued until the next day, when the jury returned a verdict of guilty on all counts. The name *Batson* was never whispered nor was the peremptory strike ever again alluded to. A *Batson v. Kentucky* challenge should be made of sterner stuff.

*Id*. at 305 (footnote and quotation marks omitted).

The Court of Special Appeals found that Gantt could not meet the prejudice prong of *Strickland* because the issue was actually waived when Gantt stated he was satisfied with jury selection. *Id*. at 306-08. "[T]here is also the prejudice prong that must be independently satisfied. It is with respect to the prejudice prong that [Gantt's] expression of satisfaction with his jury is toxic to his claim of error. Even if he did not waive *Strickland v. Washington* in toto, he waived the prejudice prong and that was fatal." *Gantt v. State*, 241 Md. App. at 307–08 (emphasis in original).

Lastly, the Court of Special Appeals determined that even if none of the procedural bars to appellate review of the *Batson* claim existed, the claim was meritless. Such a finding withstands scrutiny. "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. Once a *Batson* objection is raised, the prosecutor is given the opportunity to offer "a race-neutral explanation"

and upon finding the explanation to be "race-neutral" the trial court may deny the objection. *See Thaler v. Haynes*, 559 U.S. 43, 44-45 (2010). A three-step process was established by *Batson*. "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'" *Foster v. Chatman*, 136 S.Ct. 1737, 1747 (2016), quoting *Snyder v. Louisiana*, 552 U.S. 242, 478 (2008).

In evaluating Gantt's claim, the Court of Special Appeals set forth the appropriate three-step process for evaluating a properly raised and preserved *Batson* challenge (*id*. at 308-09), and then found that the prosecutor provided a race-neutral explanation for the strike, e.g. that he was "impressed" with the appearance of another specific juror who appeared favorable to the State and who the prosecutor wanted on the jury. *Id*. at 313. The appellate court held that getting "rid of any prospective juror for the affirmative purpose of seating a more desirable juror is facially a non-discriminatory purpose not forbidden by *Batson*." *Id*. at 313. The Court of Special Appeals then deferred to the fact finding of the trial judge that the strike was not used to exclude a person on racial grounds, holding such a determination was not clearly erroneous. *Id*. at 314-15.

There is no basis to overturn the Court of Special Appeals determinations. The Court of Special Appeals properly stated the *Strickland* standard and determined that Gantt could not satisfy either its performance or prejudice prong. The Court of Special Appeals found that appellate counsel was entitled to select the most meritorious issues to pursue on appeal. Additionally, the Court of Special Appeals determined that the likelihood of success on appeal with regard to the issue of the *Batson* challenge was non-existent given its waiver. Appellate counsel was not

required to raise such an issue at the expense of burying good arguments. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983); *Smith v. Murray*, 477 U.S. 527, 536 (1986) (holding winnowing of claims on appeal is hallmark of effective appellate advocacy).

This Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence," and this Court "cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable." *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016); *see also Harrington*, 562 U.S. at 100-01; 28 U.S.C. § 2254(e)(1). Gantt does not meet his burden.

Here, the Maryland Court of Special Appeals' determination is supported by the record which demonstrates that Gantt did not properly preserve his *Batson* objection, waived the objection, and the objection was without merit. The record demonstrates that appellate counsel was not ineffective for failing to pursue this issue on appeal and that Gantt was not prejudiced by counsel's failure to do so. The Maryland Court of Special Appeals' decision is supported by the record, survives this court's scrutiny, and will not be disturbed.

## CONCLUSION

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*,

537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Mr. Gantt may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

      A separate Order follows.

December 2, 2022_____
Date

_____/s/_____
Paul W. Grimm
United States District Judge